UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DINO N. THEODORE,<br>　　　Plaintiff<br><br>v.<br><br><br>DEMOULAS SUPER MARKETS,<br>INC.,<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.: 05-10314RGS |

**PLAINTIFF'S REPORT TO THE COURT**
**REGARDING FEDERAL QUESTION JURISDICTION**

In response to the Court's Order dated September 20, 2005, the plaintiff, Dino N. Theodore, submits this report regarding federal jurisdiction.

The basis for federal jurisdiction in this case is found in *28 USC § 1331*, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." It is also found in *28 USC § 1343*, which provides:

> (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

This case arises under Title III of the Americans with Disabilities Act, *42 U.S.C. § 12101,* an Act of Congress providing for equal rights of disabled citizens. "Title III of the ADA targets discrimination by privately operated places of public accommodation (including supermarkets and other types of retail shops). It sends a bluntly worded

message to those establishments that fall within its purview: you may not discriminate against an individual in the full and equal access to goods and services on the basis of a disability." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 303 (1st Cir. 2003).

In Paragraph 11 of Count I the *Amended Complaint*, the plaintiff alleged:

"The defendant, Demoulas Super Markets, Inc., has discriminated against the plaintiff and continues to discriminate against the plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Market Basket store in the Sunrise Plaza, as prohibited by 42 U.S.C. § 12181 *et seq.* by failing to remove architectural barriers as required by 42 U.S.C § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to individuals with disabilities as required by 42 U.S.C § 12183(a)(2)."

Although there are counts in the *Amended Complaint* based upon Massachusetts statutes, this is not a case where the plaintiff has invoked the ADA as an element of a state law cause of action. *E.g., Struffolino v. McCoy*, 2005 DNH 108; 2005 U.S. Dist. LEXIS 14158. Mr. Theodore brings a private right of action under the ADA, which specifically provides a private right of action to redress unlawful discrimination in places of public accommodation. *42 U.S.C. § 12188(a)(1)*.

As alleged in Paragraph 10 of Count I of the *Amended Complaint* the Department of Justice, Office of the Attorney General, promulgated federal regulations on July 26, 1991 to implement the requirements of the ADA pursuant to the mandates of 42 U.S.C. § 12134(a). The regulations are known as the Americans with Disabilities Act Accessibility Guidelines, 28 CFR Part 36 ("ADAAGs").

At the Rule 16(b) conference held by the Court on June 6, 2005, defense counsel suggested that at some time between March 7, 2005, the date of service of the *Amended Complaint*, and June 6, 2005, the defendant corrected all of the ADAAG violations

alleged in the *Amended Complaint* (i.e., all of the alleged illegal barriers to access by a person in a wheelchair). Defense counsel suggested that the defendant's removal of all barriers to wheelchair access at its place of public accommodation divested this Court of jurisdiction. Contrary to defense counsel's assertions, the defendant has corrected some, but not all, ADAAG violations. The corrections that have been made since service of the *Amended Complaint* and the corrections that have not been made are identified in the accompanying *Affidavit of Dino N. Theodore*. The specific ADAAG violations are identified in the accompanying *Affidavit of Nicholas S. Guerrera.* Ongoing ADAAG violations continue to vest jurisdiction in this Court under *28 USC §§ 1331* and *1343*. The case continues to turn on questions of federal law.

                                             Respectfully submitted,

                                             The Plaintiff, DINO N. THEODORE,

                                             By his Attorneys,

                                             /s/Nicholas S. Guerrera_____
                                             Nicholas S. Guerrera, BBO # 551475
                                             Shaheen, Guerrera & O'Leary, LLC
                                             Jefferson Office Park
                                             820A Turnpike Street
                                             North Andover, MA 01845
Dated: 9/30/05                             (978) 689-0800

## CERTIFICATE OF SERVICE

     I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail pursuant to Fed. R. Civ. P. 5.

Dated: 9/30/05
                                             /s/Nicholas S. Guerrera_____
                                             Nicholas S. Guerrera

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
DINO N. THEODORE,                           )
        Plaintiff                          )
                                            )
v.                                          ) CIVIL ACTION NO.: 05-10314RGS
                                            )
                                            )
DEMOULAS SUPER MARKETS, INC.                )
Defendant                                   )
_____)

## AFFIDAVIT OF DINO N. THEODORE

Dino N. Theodore, on his oath, swears and deposes as follows:

1.     My name is Dino N. Theodore. I am the plaintiff in the above-captioned case. I submit this *Affidavit* to support the Court's retention of jurisdiction over this matter on federal question grounds.

2.     Since filing the *Amended Complaint*, I have patronized the defendant's Market Basket store within the Sunrise Plaza, 1235 Bridge Street, Lowell, Massachusetts on several occasions.

3.     On September 26, 2005, I visited the Market Basket store with my attorney, Nicholas S. Guerrera, for the specific purpose of pointing out the barriers to wheelchair access that have been removed and the barriers that have not been removed since I filed the *Amended Complaint*.

4.     In Paragraphs 18 through 27 of the *Amended Complaint*, I alleged that the following barriers to wheelchair access were present at the defendant's supermarket:

> "18.     The parking lot at the Sunrise Plaza lacks "van accessible" parking as required by ADAAG 4.1.2(5)(b). There are designated handicapped parking spaces at the 1235 Bridge Street Market Basket, but the number of such spaces is insufficient as compared to the total number of spaces in the lot. Most of the plaintiff's visits to this Market Basket involve driving around and waiting for a designated wheelchair accessible space to open up.
>
> 19.     There are no 60" access aisles adjacent to the current disabled parking spaces as required by ADAAG 4.1 and 4.6.6.

20. There is no accessible route from the wheelchair-designated parking spaces into the store.

21. The curb cut leading onto the sidewalk at the main entrance has a gap between the parking lot and the bottom of the ramp that can catch the wheels of a wheelchair and cause it to tip.

22. There is a "Specials" table at the entrance of the supermarket. The table is usually crowded, making it difficult for the plaintiff to maneuver his wheelchair around to the shopping area.

23. The Sunrise Plaza lacks at least one accessible route complying with ADAAG 4.3 within the boundary of the Plaza from public transportation stops and/or public streets or sidewalks to an accessible building entrance all as required by ADAAG 4.3.2.

24. The main customer service counter lacks a lowered portion accessible to persons in wheelchairs. Whenever the plaintiff has used that counter, he has had to shout to get a clerk to notice him because he is below the clerk's line of sight. Similarly, the deli and seafood counters lack a lowered portion. The plaintiff has had similar experiences trying to get a clerk's attention there. The meat counter has a buzzer button that is outside the reach range of a person in a wheelchair. The buzzer is designed to call the butcher from the freezer. The plaintiff finds it difficult to reach. He also cannot reach the ticket dispenser. It is embarrassing for him to have to rely on other customers to get his ticket.

25. There are no accessible checkout aisles within the Market Basket store as required by ADAAG 7.3. The checkout aisles are too narrow to pass through in a wheelchair. The one exception would be the aisle for 12 items or fewer. That one is at one end of the row of aisles and has no adjacent checkout aisle, but it is next to the carriage storage area. There is a lot of traffic in the area making it difficult to purchase items and exit the building. If the plaintiff is purchasing more than 12 items, however, he has to travel around all of the checkout aisles rather than through the one he is using and come to the exit point of the aisle. He has had to leave his son or companion to place the groceries on the checkout counter. When he arrives at the exit point of the aisle, he pays the cashier. The checkout aisles have no lowered counter or surface that a person in a wheelchair could use as a writing surface to write a check.

26. There are no accessible restrooms within the Market Basket store as required by ADAAG 4.1, 4.16, 4.17, 4.22 and 4.23. The men's restroom has no lowered urinal for use by a man in a wheelchair. The toilet paper dispenser is mounted on the metal stall wall instead of on the cinderblock wall closest to the toilet. This puts the toilet paper outside the reach of a person who cannot lean far to the left or stand up and take a step toward it. The drainpipes on both sinks are not covered or recessed to protect a person in a wheelchair against a contact injury or a thermal injury to his knees. The soap dispenser is not within the reach of a person in a wheelchair.

27. On information and belief, the plaintiff alleges that there are other violations present at the 1235 Bridge Street Market Basket store that will be more fully alleged upon discovery and further inspection."

2

5.      The defendant has made the following changes: (1) there is now a lowered portion of the main customer service counter; (2) the "Specials" table has been made into two smaller tables with an aisle in between; (3) the ticket dispenser at the deli counter has been mounted on a stand to put it within the reach of a person in a wheelchair, however the deli and seafood counter continues to lack a lowered portion accessible to persons in wheelchairs; (4) the men's restroom has a lowered urinal for use by a man in a wheelchair, however the entry/exit door requires more than five pounds of force to open making it difficult for me to open; (5) the toilet paper dispenser in the men's restroom is properly mounted; (4) the drainpipes on the sinks in the men's restroom are covered to protect against contact injury or thermal injury; (5) the soap dispenser in the men's restroom is within the reach of a person in a wheelchair; and (6) there is a check out aisle, Aisle 12, marked as wheelchair accessible that is wide enough to accommodate a wheelchair, but there is no lowered counter or surface that a person in a wheelchair could use as a writing surface to write a check.  Furthermore, there is a recycling collection area for cans, bottles, and plastic at the end of Aisle 12, as well as an area where the managers and cashiers exchange register draws.  The area is frequently congested with shopping carts and recyclables, which make it impossible for me to turn my wheelchair left to leave the store.

6.      The defendant has not removed the following barriers to wheelchair access: (1) the parking lot at the Sunrise Plaza still lacks "van accessible" parking; (2) there is no accessible route from the wheelchair-designated parking spaces into the store because the curb ramp leading onto the sidewalk at the main entrance has a gap between the parking lot and the bottom of the curb ramp that catches the wheels of a wheelchair and causes it to tip; (3) the curb ramp is so short and steep that going up the ramp presents a risk of being tipped backward in a wheelchair; (4)  the deli and seafood counter continues to lack a lowered portion accessible to persons in wheelchairs; (5)  the entry/exit door of the men's rest room requires more than five pounds of force to open making it difficult for me to open; (6)  there is no lowered counter or surface at Aisle 12 that a person in a

wheelchair could use as a writing surface to write a check and (7) the Sunrise Plaza lacks at least one accessible route within the boundary of the Plaza from public transportation stops and/or public streets or sidewalks to an accessible building entrance.

7.    Furthermore, there is a restaurant/snack bar called the "Sunrise Snackery" located next to the designated wheelchair accessible aisle.  There are no tables, only a counter that is low enough for a person in a wheelchair to use, but the entire counter is taken up with bar stools fixed to the floor.  There is no space for a person in a wheelchair to pull up to the counter for service.  Last year, my son, Nick, ordered a hamburger at the counter.  I would have ordered something for myself, but I felt embarrassed to sit with the plate in my lap.  There should be a portion of the counter reserved for service to patrons in wheelchairs.  It can be done fairly easily, I think, by marking an area as reserved and by having adjacent bar stools that slide up and out of holes in the floor, so that they can be removed temporarily when a wheelchair patron wants to be served at the counter.

8.    There is only one wheelchair accessible check out aisle, Aisle 12.  If the end of Aisle 12 is congested with recyclables and shopping carts, as it has been on occasions when I have visited the store, then it becomes unusable for a person in a wheelchair.  Aisle 12 lacks a lowered counter or surface that a person in a wheelchair could use as a writing surface to write a check.  Furthermore, I have seen Aisle 12 closed when the store is not very busy.  I see no reason not to have Aisle 12 open at all times, since anyone can use it.  It is not restricted to shoppers in wheelchairs, whereas the other check out aisles are restricted to shoppers who are not in wheelchairs.

9.    The availability of accessible parking, especially van accessible parking, is quite important to me. My best estimate is that there are 348 parking spaces in the parking lot of the Sunrise Plaza.  There are 12 spaces marked as accessible in the entire lot, none of which are marked as "van accessible" with a 96" access aisle.

10. A van accessible space is supposed to have a 96" access aisle. I need a large access aisle in order to exit my car in my wheelchair. Without fully accessible spaces reserved, including at least one van accessible space, I can never be certain that I will be able to access the defendant's supermarket at any particular time.

11. The gap between the parking lot surface and the bottom of the curb ramp leading to and from the main entrance is troubling because it causes the smaller front wheels of my wheelchair to catch. The gap is approximately one inch wide. When my front wheels catch the gap, I am at risk of being propelled forward out of my wheelchair and injured. It appears that the defendant might have put a coat of green paint on the curb ramp (and in the gap) since this case was filed, but the gap continues to make it dangerous. It is also, as I stated above, short and steep such that going up the ramp presents a risk of being tipped backward in a wheelchair. If I am with my son, he will get behind my wheelchair and give me a little push up the ramp and keep me from tipping back, but it is dangerous for me to use independently. I know from retrofitting my own house that wheelchair ramps should not have a grade greater than 1 inch per foot. I know that the grade on the curb ramp at Market Basket is steeper than that.

12. I would like to be able come into the Plaza from the street in my wheelchair if necessary, but I cannot because there is no accessible route within the boundary of the Plaza from public transportation stops and/or public streets or sidewalks to an accessible building entrance.

13. I will request the Court's permission to amend my complaint again to delete references to barriers that have been removed since the complaint was filed and to add allegations regarding the men's rest room door and the lunch counter.

14. I have made the foregoing statements on the basis of my personal knowledge, observations, and memory.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 29th DAY OF SEPTEMBER 2005.

                                                /s/Dino N. Theodore_____
                                                Dino N. Theodore

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**DINO N. THEODORE,**                   )
    **Plaintiff**                       )
                                        )
v.                                      )   **CIVIL ACTION NO.: 05-10314RGS**
                                        )
                                        )
**DEMOULAS SUPER MARKETS,**             )
**INC.,**                               )
**Defendant**                           )
_____)

### AFFIDAVIT OF NICHOLAS S. GUERRERA

Nicholas S. Guerrera, on his oath, swears and deposes as follows:

1. My name is Nicholas S. Guerrera. I am the plaintiff's attorney in the above-captioned case.

2. I submit this *Affidavit* to support the Court's retention of jurisdiction over this matter on federal question grounds.

3. As set forth in the accompanying *Affidavit of Dino N. Theodore*, the defendant has corrected some, but not all of the alleged ADAAG violations at its supermarket.

4. The parking lot at the Sunrise Plaza still lacks a "van accessible" parking as required by ADAAG 4.1.2(5)(b).

5. ADAAG 4.1.2(5)(b) provides, "One in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated 'van accessible' as required by 4.6.4."

6. There are approximately 348 parking spaces at the 1235 Bridge Street Market Basket. Twelve parking spaces are designated as accessible parking spaces, but there is

no space marked as "van accessible" with a 96" access aisle as required by ADAAG 4.1.2(5)(a).

7.    There is no accessible route from the wheelchair-designated parking spaces into the store because the curb cut leading onto the sidewalk at the main entrance has an approximately 1" gap between the parking lot surface and the bottom of the ramp that can catch the wheels of a wheelchair and cause it to tip.  ADAAG 4.5.1 provides, "Ground and floor surfaces along accessible routes and in accessible rooms and spaces including floors, walks, ramps, stairs, and curb ramps, shall be stable, firm, slip-resistant, and shall comply with 4.5."  The gap in the between the parking lot surface and the curb cut causes the ground surface to be unstable and in violation of ADAAG 4.5.1.  Furthermore, ADAAG 4.7.2 states, "Transitions from ramps to walks, gutters, or streets shall be flush and free of abrupt changes."

8.    The slope of the same curb ramp exceeds the allowable slope for curbs modified as part of alterations to existing facilities.  ADAAG 4.1.6(3)(a) provides as follows:

> "(3) Special Technical Provisions for Alterations to Existing Buildings and Facilities:
>
> (a) Ramps: Curb ramps and interior or exterior ramps to be constructed on sites or in existing buildings or facilities where space limitations prohibit the use of a 1:12 slope or less may have slopes and rises as follows: (i) A slope between 1:10 and 1:12 is allowed for a maximum rise of 6 inches.  (ii) A slope between 1:8 and 1:10 is allowed for a maximum rise of 3 inches. A slope steeper than 1:8 is not allowed."

9.    The deli and seafood counter continues to lack a lowered section or an auxiliary counter accessible to persons in wheelchairs.  ADAAG 7.2(2) requires the defendant to make the deli and seafood counter accessible as follows:

> "(2) At ticketing counters, teller stations in a bank, registration counters in hotels and motels, box office ticket counters, and other counters that may not have a

cash register but at which goods or services are sold or distributed, either: (i) a portion of the main counter which is a minimum of 36 in (915 mm) in length shall be provided with a maximum height of 36 in (915 mm); or (ii) an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided; or (iii) equivalent facilitation shall be provided (e.g., at a hotel registration counter, equivalent facilitation might consist of: (1) provision of a folding shelf attached to the main counter on which an individual with disabilities can write, and (2) use of the space on the side of the counter or at the concierge desk, for handing materials back and forth)."

10. The entry/exit door of the men's rest room requires more than five pounds of force to open. ADAAG 4.13.11 ("Door Opening Force") provides, "The maximum force for pushing or pulling open a door shall be as follows: (b) interior hinged doors: 5 lbf (22.2N)."

11. The Sunrise Plaza lacks at least one accessible route complying with ADAAG 4.3 within the boundary of the Plaza from public transportation stops and/or public streets or sidewalks to an accessible building entrance all as required by ADAAG 4.3.2(1), which provides, "At least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking, and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public."

12. There is a designated accessible checkout aisle within the Market Basket store as required by ADAAG 7.3. The checkout aisle has no lowered counter or surface that a person in a wheelchair could use as a writing surface to write a check. ADAAG 7.2(1) provides, "In department stores and miscellaneous retail stores where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 in (915mm)

3

in length with a maximum height of 36 in (915 mm) above the finish floor. It shall be on an accessible route complying with 4.3. The accessible counters must be dispersed throughout the building or facility. In alterations where it is technically infeasible to provide an accessible counter, an auxiliary counter meeting these requirements may be provided."

11.     There is a restaurant/snack bar called the Sunrise Snackery located next to the designated wheelchair accessible aisle.  There are no tables, only a counter that is low enough for a person in a wheelchair to use, but the entire counter is taken up with bar stools fixed to the floor.  There is no space for a person in a wheelchair to pull up to the counter for service.  ADAAG 5.2 provides, "Where food or drink is served at counters exceeding 34 in (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in (1525 mm) in length minimum shall be provided in compliance with 4.32 or service shall be available at accessible tables within the same area."

12.     I have made the foregoing statements on the basis of my personal knowledge, observations, and memory.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 30th DAY OF SEPTEMBER 2005.

                                                              /s/Nicholas S. Guerrera_____
                                                              Nicholas S. Guerrera