UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DINO N. THEODORE,<br>            Plaintiff<br><br>    v.<br><br><br>DEMOULAS SUPER MARKETS, INC.<br>Defendant | )<br>)<br>)<br>)<br>)   CIVIL ACTION NO.: 05-10314RGS<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

### I. PRELIMINARY STATEMENT

In this action, the plaintiff seeks injunctive relief, compensatory and exemplary damages to remedy unlawful discrimination by the defendant against the plaintiff in the defendant's place of public accommodation in violation of (1) the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA") and (2) Massachusetts General Laws c. 272, § 98 and (3) Massachusetts General Laws c. 93, § 103 and Article 114 of the Constitution of the Commonwealth of Massachusetts. Additionally, Dino M. Theodore claims negligent infliction of emotional distress. The plaintiff, Dino N. Theodore, brings this cause of action against Demoulas Super Markets, Inc. and as causes of action allege as follows:

### II. PARTIES

1. The plaintiff, Dino N. Theodore, is 45 years of age. Mr. Theodore suffered an accidental gunshot wound to the T7 vertebrae in 1981. He is paralyzed from the chest down and requires the use of a wheelchair for ambulation. He resides at 1305 Methuen Street, Dracut, Massachusetts. He is a practicing attorney employed by the Department of Industrial

Accidents. He has been admitted to practice law in Massachusetts since 1993. He is a person with a disability who uses a wheelchair for ambulation. Mr. Theodore is a qualified individual with disabilities within the meaning of all applicable statutes including the ADA and Massachusetts statutes.

2.    The plaintiff, Dino N. Theodore, shops at Market Basket, a supermarket located within the Sunrise Plaza, 1235 Bridge Street, Lowell, Massachusetts. Within one year before filing this Complaint, he has visited this place of public accommodation on more than one occasion and intends to return.

3.    Market Basket is a business owned and operated by the defendant, Demoulas Super Markets, Inc., a Massachusetts corporation with a principal place of business at 875 East Street, Tewksbury, Middlesex County, Massachusetts. The defendant, Demoulas Super Markets, Inc., owns and operates approximately sixty grocery stores in the states of Massachusetts and New Hampshire, which are subject to the requirements of Title III of the ADA.

4.    The Defendant, Demoulas Super Markets, Inc., is a private entity that operates a public accommodation as defined in Title III of the ADA, 42 U.S.C. § 12181 and an entity that affects commerce and that is subject to the requirements of Title III of the ADA.

5.    This case arises out of the defendant's unlawful practice of denying access to goods and services at its place of public accommodation to people with disabilities.

### III.    JURISDICTION AND VENUE

6.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and § 1343 in that this is an action arising under the laws of the United States and the defendant is subject to personal jurisdiction.

7.      Venue is appropriate in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of Massachusetts.

8.      The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

## COUNT I -- VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

9.      On or about July 26, 1990, Congress enacted the ADA, which is codified at 42 U.S.C. §12181 and 28 C.F.R. Part 36.

10.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA.

11.     The defendant, Demoulas Super Markets, Inc., has discriminated against the plaintiff and continues to discriminate against the plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Market Basket store in the Sunrise Plaza, as prohibited by 42 U.S.C. § 12181 *et seq.* by failing to remove architectural barriers as required by 42 U.S.C § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to individuals with disabilities as required by 42 U.S.C § 12183(a)(2).

12.     The Market Basket store at 1235 Bridge Street, Lowell (Sunrise Plaza) is a public accommodation subject to the provisions of Title III of the ADA.

13.     The defendant has failed to remove barriers to access by persons with mobility disabilities at the Market Basket store where such barrier removal is readily achievable.

14.   Demoulas Super Markets, Inc. has failed to provide necessary auxiliary aids and services at the 1235 Bridge Street Market Basket store where provision of such auxiliary aids and services would not pose any undue economic or architectural burden.

15.   Demoulas Super Markets, Inc. has failed to modify policies and procedures at the 1235 Bridge Street Market Basket store where required to ensure equal access for persons with mobility disabilities.

16.   Demoulas Super Markets, Inc., from time to time, has altered the 1235 Bridge Street Market Basket store without complying with access requirements mandated by Title III of the ADA.

17.   Within one year before the filing of this complaint, Mr. Theodore, who uses a wheelchair for mobility, visited the Market Basket store at 1235 Bridge Street on more than one occasion and intends to return.

18.   The parking lot at the Sunrise Plaza lacks "van accessible" parking as required by ADAAG 4.1.2(5)(b).  There are designated handicapped parking spaces at the 1235 Bridge Street Market Basket, but the number of such spaces is insufficient as compared to the total number of spaces in the lot.  There are an estimated 348 parking spaces in the parking lot of the Sunrise Plaza.  There are 12 spaces marked as accessible in the entire lot, none of which are marked as "van accessible" with a 96" access aisle.   Most of the plaintiff's visits to this Market Basket involve driving around and waiting for a designated wheelchair accessible space to open up.

19.   There is no accessible route from the wheelchair-designated parking spaces into the store.

20.     The curb cut leading onto the sidewalk at the main entrance has a gap between the parking lot and the bottom of the ramp that can catch the wheels of a wheelchair and cause it to tip. The curb ramp is so short and steep that going up the ramp presents a risk of being tipped backward in a wheelchair.

21.     The Sunrise Plaza lacks at least one accessible route complying with ADAAG 4.3 within the boundary of the Plaza from public transportation stops and/or public streets or sidewalks to an accessible building entrance all as required by ADAAG 4.3.2.

22.     The deli and seafood counter lacks a lowered portion accessible to persons in wheelchairs.

23.     There is only one wheelchair accessible check out aisle, Aisle 12. Whenever the end of Aisle 12 is congested with recyclables and shopping carts, it becomes unusable for a person in a wheelchair. Aisle 12 lacks a lowered counter or surface that a person in a wheelchair could use as a writing surface to write a check. Aisle 12 closed when the store is not very busy.

24.     There are no accessible restrooms within the Market Basket store as required by ADAAG 4.1, 4.16, 4.17, 4.22 and 4.23. The entry/exit door of the men's rest room requires more than five pounds of force to open making it difficult for a person in a wheelchair, such as the plaintiff, to open.

25.     There is a restaurant/snack bar called the "Sunrise Snackery" located next to the designated wheelchair accessible aisle. There are no tables, only a counter that is low enough for a person in a wheelchair to use, but the entire counter is taken up with bar stools fixed to the floor. There is no space for a person in a wheelchair to pull up to the counter for service.

26. On information and belief, the plaintiffs allege that there are other violations present at the 1235 Bridge Street Market Basket store that will be more fully alleged upon discovery and further inspection.

27. The defendant has failed to make efforts required under the ADA to remove such barriers to the extent readily achievable, nor has the defendant complied with accessibility standards to the maximum extent feasible.

28. The defendant has also, by maintaining such barriers, failed to comply with the ADA and access requirements for areas of new construction or alteration.

29. The actions and initiatives which the defendant has failed to undertake in order to make the Market Basket store accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with disabilities at minimal expense to the defendant.

30. The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendants will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

WHEREFORE, the plaintiff requests that the Court will order the defendant to alter the Market Basket store to make it readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiff appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

## COUNT II – MASSACHUSETTS GENERAL LAWS c. 272, § 98

31. The plaintiff repeats the preceding allegations as if set forth completely here.

32.     Under Massachusetts General Laws c. 272, § 98, "All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons. This right is recognized and declared to be a civil right."

33.     As stated above in Count I, the plaintiff has been denied equal access to a place of public accommodation in violation of his civil rights because of the above-described barriers to wheelchair access at the 1235 Bridge Street Market Basket store.

34.     Until the above-described barriers to wheelchair access are removed from the 1235 Bridge Street Market Basket store, the plaintiff will continue to be denied equal access to a place of public accommodation in violation of his civil rights.

35.     Further, on December 12, 2004, the plaintiff was shopping with his son, Nick, then age 11, at the Market Basket store. Nick reached for a box of tea on an upper shelf. Something caused him to lose his balance and fall backwards on top of the plaintiff.

36.     The plaintiff fell backwards in his wheelchair with his son on top of him. The plaintiff struck his head on the floor. He fell out of his wheelchair. He had a loss of consciousness.

37.     When the plaintiff began to regain consciousness, his arms were numb and paralyzed. His head and neck were in awful pain. He panicked because he thought he had lost the use of his arms. He was distraught and said, "I can't move my arms."

38.     The plaintiff saw a large male grocery clerk standing over him as he lay on the floor. The clerk physically lifted him up off the floor, put him back in his wheelchair and abruptly pushed him out of the store onto the sidewalk.

39. The clerk never asked the plaintiff whether he needed or wanted medical attention. After rolling the plaintiff out the door, the clerk asked, "Everything OK, sir?" He then turned and walked away as if nothing had happened.

40. The plaintiff's shopping cart full of groceries simply was left behind.

41. The plaintiff was in no state of mind to take control of the situation or request medical care. He was confused, embarrassed, frightened and in pain. For a few minutes, he sat in his wheelchair on the sidewalk with his son. Gradually, he gathered his thoughts. He regained partial sensation and movement in his arms. He was still in pain. His arms were weak and tingling.

42. It took the plaintiff approximately 20 minutes (with the assistance of his son) to get himself to and into his car. Ordinarily, the plaintiff can do this without help.

43. The plaintiff realized that he needed medical care. He drove home with his son to retrieve his self-catheterization kit. He was expecting that he would need to be admitted into a hospital and would need to have the catheterization kit with him to urinate.

44. The plaintiff was seen in the emergency room at Saints Memorial Hospital. His wife, daughter, and later, his father came to the hospital. He spent several hours there. He did not need to be admitted to a bed. He was released with a diagnosis of closed head injury, cerebral concussion, contusion to the cervical spine and parasthesias of both arms. His primary care physician, Dr. Paul Weinstein, later confirmed this diagnosis.

45. The plaintiff continues to have pain in his neck and back, with weakness and a tingling sensation in his right arm. He has been under the care of a neurologist, in addition to his primary care physician, and has required physical therapy.

46. The clerk's actions in abruptly lifting the plaintiff into his wheelchair and pushing

him out of the store was more than rude, ignorant, and dangerous. It was a violation of the plaintiff's civil rights as a physically disabled person.

47.     The plaintiff was treated differently and in a discriminatory fashion because of his status as a disabled person who uses a wheelchair. The defendant discriminated against the plaintiff on account of his physical disability relative to his treatment in the Market Basket store in violation of his civil rights.

48.     The plaintiff states, on information and belief, that a Market Basket employee, as a matter of company policy, would have offered to call medical help for a non-disabled person who suffered a similar accident or medical emergency in the store.

49.     The plaintiff's physical injuries were made worse by having been manhandled into his wheelchair by the clerk.

50.     In addition to the physical injuries described above, the plaintiff lost an opportunity to take a position in a private law practice at a rate of pay higher than what he now earns. He lost time and continues to lose time at his current job.

51.     The plaintiff initiated his claim under Massachusetts General Laws c. 272, § 98 by filing a Charge of Discrimination and Statement of Particulars with the Massachusetts Commission Against Discrimination on January 18, 2005 and by requesting in writing on February 2, 2005 that the MCAD release his claim for judicial determination.

        WHEREFORE, the plaintiff demands all compensatory and exemplary damages permitted by statute and all attorneys' fees and costs permitted by statute.

### COUNT III – MASSACHUSETTS GENERAL LAWS c. 93, § 103

52.     The plaintiff repeats the preceding allegations as if set forth completely here.

53.     Section 103(a) of Chapter 93 of the Massachusetts General Laws provides, "Any

9

person within the commonwealth, regardless of handicap or age as defined in chapter one hundred and fifty-one B, shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts, inherit, purchase, lease, sell, hold and convey real and personal property, sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under Article CXIV of the Amendments to the Constitution."

54. Article CXIV of the Amendments to the Massachusetts Constitution provides, "No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth."

55. As a result of the misfeasance and malfeasance of the defendant as described in Count I and Count II above, the plaintiff has been deprived of his right to purchase personal property, specifically, items sold at Market Basket, on an equal basis with persons who do not use wheelchairs in violation of G.L. c. 93, § 103.

56. As a result of the misfeasance and malfeasance of the defendant as described in Count I and Count II above, the plaintiff has been excluded from the participation in, denied the benefits of, and has been subject to discrimination under an activity within the commonwealth, specifically, grocery shopping at the Market Basket store on Bridge Street in Lowell solely by reason of his handicap all in violation of his rights under Article CXIV of the Amendments to the Massachusetts Constitution.

57. The plaintiff has been aggrieved by the defendant's denial of his civil and constitutional rights.

58. The plaintiff initiated his claim under Massachusetts General Laws c. 93, § 103 by

filing a Charge of Discrimination and Statement of Particulars with the Massachusetts Commission Against Discrimination on January 18, 2005 and by requesting in writing on February 2, 2005 that the MCAD release his claim for judicial determination.

    WHEREFORE, the plaintiff demands compensatory and exemplary damages as permitted under Section 103(b) of Chapter 93 of the Massachusetts General Laws and an award of the costs of the litigation and reasonable attorneys' fees in an amount to be determined by the court as permitted under Section 103(c) of Chapter 93 of the Massachusetts General Laws.

### COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

59.    The plaintiff repeats the preceding allegations as if set forth completely here.

60.    The defendant's clerk was negligent in that a reasonably prudent person in the ordinary course of human events would not have lifted an injured and partially conscious paraplegic person up off of the floor and put him back in his wheelchair as the defendant's clerk did on December 12, 2004.

61.    The defendant's clerk was negligent in that a reasonably prudent person in the ordinary course of human events would not have pushed an injured and partially conscious paraplegic person out of the defendant's store and would not have left him on the sidewalk with his eleven year-old son as the defendant's clerk did on December 12, 2004.

62.    The defendant's clerk was negligent in that a reasonably prudent person in the ordinary course of human events would have called for or would have offered to call for medical assistance for an injured and partially conscious paraplegic person who had fallen out of his wheelchair as the plaintiff did in the defendant's supermarket on December 12,

11

2004.

63. The plaintiff suffered emotional distress as a proximate result of the action and inaction of the defendant's clerk.

64. The plaintiff's emotional distress was evidenced by physical harm manifested by objective symptoms, including, but not limited to, sleeplessness, nausea, and loss of appetite.

65. A reasonable person would have suffered emotional distress under the circumstances.

WHEREFORE, the plaintiff demands compensation for fright, anger, anxiety, depression and physical harm attributable to the defendant's actions.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE.**

          Respectfully submitted,
          The Plaintiffs, DINO N. THEODORE,

          By his Attorneys,

          /s/Nicholas S. Guerrera
          Nicholas S. Guerrera, BBO # 551475
          Shaheen, Guerrera & O'Leary, LLC
          Jefferson Office Park
          820A Turnpike Street
          North Andover, MA 01845
DATED:5/4/06       (978) 689-0800